

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID J. AUBEL and<br>ROBERT J. RAFFA,<br><br>Defendants. | CRIMINAL NO. 16-10125<br>VIOLATIONS:<br>18 U.S.C. § 1349 (Conspiracy)<br>18 U.S.C. § 1348 (Securities Fraud)<br>18 U.S.C. §§ 1343, 1349 (Wire Fraud)<br>18 U.S.C. § 2 (Aiding and Abetting)<br>18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) (Criminal Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment:

1. Defendant DAVID J. AUBEL ("AUBEL") was a resident of Marco Island, Florida.

2. Defendant ROBERT J. RAFFA ("RAFFA") was a resident of Penacook, New Hampshire.

3. The cooperating witness (the "CW"), whose identity is known to the Grand Jury, was a resident of Massachusetts and a stock promoter.

4. Green Energy Renewable Solutions, Inc. ("Green Energy") was a Florida corporation initially based in Las Vegas, Nevada and, later, in Detroit, Michigan. On or about and between April 2012 and January 2013, Green Energy purported to be in the business of

developing and operating waste processing and recycling facilities for municipal solid waste and construction and demolition waste. Green Energy's stock was registered pursuant to Section 12(g) of the Securities Exchange Act of 1934 (the "Exchange Act"), quoted under the ticker symbol "EWRL," and traded on the over-the-counter ("OTC") securities markets.

5. The United States Securities and Exchange Commission (the "SEC") is an independent agency of the executive branch of the United States government. The SEC is responsible for enforcing federal securities laws and promulgating rules and regulations in keeping with the same. These laws, rules, and regulations include provisions that require individuals to file public reports with the SEC after acquiring direct or indirect ownership of more than five percent of a class of a company's registered "securities" or shares. They also require individuals who directly or indirectly own more than ten percent of a class of a company's registered securities or shares to file public reports with the SEC after selling some or all of these shares.

6. A pump-and-dump scheme generally involves the artificial inflation of the stock price and/or trading volume of a publicly traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock, typically at artificially high prices, to other investors (the "dump"). Generally, such schemes effect the artificial inflation by, among other things, issuing news releases and promotional materials—often containing false, misleading, or exaggerated information—and by engaging in manipulative trading of the stock to affect its price or to generate the appearance of demand for the shares.

## GENERAL ALLEGATIONS

7. Beginning in or about April 2012 and continuing through at least January 2013, AUBEL and RAFFA, together with others both known and unknown to the Grand Jury, engaged in a scheme to manipulate the market for Green Energy's securities and to sell shares of the company's stock to the public in connection with promotional campaigns, as well as to a purported network of brokers who would purchase the stock and place it in client accounts in exchange for kickbacks (the "Green Energy Scheme").

8. AUBEL, RAFFA, and their co-conspirators accomplished their scheme by, among other things, using four foreign entities to covertly acquire nearly all of Green Energy's free-trading shares without reporting their controlling interest as required by law. AUBEL and RAFFA then engaged a stock promoter to send blast e-mails touting Green Energy to potential investors. As the public was being urged to buy Green Energy's stock, AUBEL and RAFFA proceeded to sell approximately 1.5 million shares of the company's stock for proceeds of over $900,000 while concealing the fact that they had orchestrated the promotional campaign encouraging investors to buy.

9. After the promotion, AUBEL and RAFFA continued to control millions of shares of Green Energy stock; using manipulative trading techniques, they sought to stabilize the company's stock price while they searched for another promoter to run a second touting campaign. AUBEL and RAFFA's search led them to the CW, a Boston-based stock promoter. In turn, the CW introduced AUBEL and RAFFA to an undercover agent (the "UC") of the Federal Bureau of Investigation (the "FBI"), who claimed to have access to a network of corrupt stock brokers who would buy AUBEL's and RAFFA's Green Energy shares and place them in client accounts in exchange for kickbacks. AUBEL and RAFFA, desiring to sell Green Energy

3

stock that they controlled, agreed that they could achieve that objective by selling to the UC's purported network of corrupt brokers through a series of coordinated trades with the UC. To that end, RAFFA proceeded to execute a coordinated trade with the UC on September 7, 2012.

### The Purpose and Objective of the Conspiracy and of the Scheme to Defraud

10. The principal purpose and objective of the conspiracy and the scheme to defraud was for AUBEL, RAFFA, and their co-conspirators to make money by selling millions of shares of Green Energy stock—which they had secretly obtained and hidden in the names of foreign entities, and whose market price they had endeavored to manipulate—both to the public in connection with promotional campaigns, and to a purported network of brokers who would purchase the stock and place it in client accounts in exchange for kickbacks from AUBEL and RAFFA.

### Manner and Means

11. AUBEL, RAFFA, and their co-conspirators used the following manner and means, among others, to accomplish the purpose and objective of the conspiracy, and of the scheme to defraud:

    a. Concealing their control over millions of shares of Green Energy stock by utilizing foreign entities to covertly acquire those shares and not filing reports disclosing their stock ownership as required by law;

    b. Hiring stock promoters to send blast e-mails touting Green Energy as a promising business on the verge of opening a waste recycling facility near Detroit, Michigan, while concealing their intent to sell millions of shares of Green Energy stock during the promotions;

4

  c. Secretly selling millions of shares of Green Energy stock through an offshore broker during the promotional campaigns that they orchestrated;

  d. Employing manipulative trading techniques to stabilize Green Energy's share price between promotional campaigns; and

  e. Engaging in a coordinated trade and agreeing to engage in a series of coordinated trades with the UC, with the intent of selling their Green Energy shares to a purported network of corrupt brokers who would purchase the stock and place it in client accounts in exchange for kickbacks.

### Acts Taken in Furtherance of the Conspiracy and the Scheme to Defraud

12. In furtherance of the conspiracy and the scheme to defraud and to accomplish their objectives, AUBEL, RAFFA and their co-conspirators committed, and caused to be committed, the following acts, among others, in the District of Massachusetts and elsewhere:

13. In or about April 2012, AUBEL and RAFFA utilized four foreign companies to covertly acquire approximately 6,500,000 shares of Green Energy stock, which represented about 92% of the company's free-trading shares and about 26% of the company's total outstanding stock. After acquiring these shares, AUBEL and RAFFA did not report their controlling interest in Green Energy by filing public reports with the SEC, as was required by Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1 and 16a-3 thereunder.

14. Once their shares were deposited and cleared for sale, AUBEL and RAFFA engaged a stock promoter who sent blast e-mails touting Green Energy's stock to potential investors. These e-mails, which were sent between approximately June 26, 2012 and July 6, 2012, and which reached thousands of recipients, including at least one individual in Massachusetts, touted Green Energy as a promising business venture, without disclosing that the

5

promotion was being orchestrated by AUBEL and RAFFA, major shareholders of Green Energy who intended to sell their stock during the promotion while encouraging others to buy. For example, a blast e-mail sent on or about June 26, 2012, via interstate wire asserted that Green Energy was "The Mirror Image Of What Archer Daniels Was 20 Years Ago!" but that, unlike stock in Archer Daniels, "you would not have to wait 20 years to see your $1,000 turn into $20,000" because "your $1,000 today could turn into $20,000 in 2-3 days!" The e-mail further claimed that the promotion had been commissioned by a "non-controlling third party" of Green Energy.

15. The initial promotion of Green Energy's stock caused a substantial increase in the company's share price and trading volume. Meanwhile, between approximately June 26, 2012 and July 6, 2012, AUBEL and RAFFA sold a net of approximately 1,447,978 shares of Green Energy stock for approximate proceeds of more than $900,000. AUBEL and RAFFA did not file public reports with the SEC disclosing these sales, as required by Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-2 and 16a-3 thereunder.

16. AUBEL and RAFFA continued to control millions of shares of Green Energy stock after the initial promotion, and they searched for another promoter to run a second touting campaign. Their search led them to the CW, with whom RAFFA met in Boston on or about August 22, 2012, to discuss the Green Energy scheme.

17. AUBEL and RAFFA utilized manipulative trading techniques to stabilize the company's share price following the initial promotion. For example, on or about and between August 7, 2012 and September 18, 2012, an account controlled by AUBEL and RAFFA executed the last purchase of the day approximately 15 times, and in most of those instances, the purchase resulted in an apparent uptick in Green Energy's share price to end the trading day.

This practice, known as "marking the close," is often employed as a manipulative device intended to ensure that a stock price does not appear to be declining at the end of the trading day, in order to mitigate the risk of a sell-off of the stock at the beginning of the next trading day.

18. Indeed, on or about September 6, 2012, during an interstate call between AUBEL, RAFFA, the CW, and the UC, AUBEL said that he had just purchased shares of Green Energy stock to "put bids back up" and that he "can't have it [Green Energy's stock price] go to uh, you know, 10 cents . . . so we'll probably buy some back at the end of the day, get the price back up again." On or about the same day, an account controlled by AUBEL and RAFFA made the last purchase of Green Energy stock, raising the share price from approximately $.095 to $.11 per share.

19. On or about September 6, 2012, AUBEL and RAFFA also discussed with the CW and the UC selling some of their Green Energy stock to a network of brokers they believed to be associated with the UC, who would place the stock in client accounts in exchange for kickbacks.

20. On or about September 7, 2012, RAFFA orchestrated the sale of 174,000 shares of Green Energy stock for approximately $20,010 from a brokerage account that he and AUBEL controlled, through the UC, to a brokerage account purportedly controlled by a broker affiliated with the UC, but in fact controlled by the FBI. Then, on or about September 19, 2012, $6,000 was wired interstate from a bank account controlled by AUBEL to a bank account which AUBEL understood to be controlled by the UC as the kickback for the 174,000 share trade.

21. On various dates in or about and between June 2012 and January 2013, AUBEL and RAFFA hired stock promoters to promote Green Energy, and on various dates in or about and between June 2012 and January 2013, these stock promoters sent blast e-mails, which reached numerous recipients, including at least one recipient in Massachusetts, touting Green

7

Energy's stock to potential investors, without disclosing that the promotions were being orchestrated by AUBEL and RAFFA, major shareholders of Green Energy who intended to sell their stock during the promotions. During this period, AUBEL and RAFFA secretly orchestrated the sale of millions of Green Energy shares under their control for net proceeds of approximately $1.6 million, an amount that includes the proceeds noted in paragraph 15 above.

## COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud—18 U.S.C. § 1349)

22. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 21 of this Indictment, and further charges that:

23. From in or about April 2012 and continuing through at least January 2013, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendants,

**DAVID J. AUBEL and
ROBERT J. RAFFA,**

together with others known and unknown to the Grand Jury conspired to commit the following offenses:

a. <u>Securities Fraud (18 U.S.C. § 1348)</u>: did knowingly execute, and attempt to execute, a scheme and artifice (1) to defraud persons in connection with the securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit, Green Energy; and (2) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit, Green Energy; and

b. <u>Wire Fraud (18 U.S.C. § 1343)</u>: having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds, to wit: telephone communications, facsimile communications, e-mail communications, and wire transfers in furtherance of the

scheme to defraud in connection with the securities of Green Energy, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### (Securities Fraud—18 U.S.C. §§ 1348, 2)

24. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 21 of this Indictment and further charges that:

25. From in or about April 2012 and continuing through at least January 2013, both dates being approximate and inclusive, in the District of Massachusetts and elsewhere, the defendants,

**DAVID J. AUBEL and
ROBERT J. RAFFA,**

did knowingly execute, and attempt to execute, a scheme and artifice (1) to defraud persons in connection with the securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit, Green Energy; and (2) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit, Green Energy.

All in violation of Title 18, United States Code, Sections 1348 and 2.

## COUNTS THREE, FOUR, AND FIVE
### (Wire Fraud—18 U.S.C. § 1343, § 1349 and § 2)

26. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 21 of this Indictment and further charges that:

27. On or about the dates set forth below, within the District of Massachusetts and elsewhere, the defendants,

**DAVID J. AUBEL and**
**ROBERT J. RAFFA,**

having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, and attempting to do so, transmitted and caused to be transmitted in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds as set forth below:

| Count | Approximate Date | Description of the Wire |
|---|---|---|
| Three | June 26, 2012 | E-mail touting Green Energy's stock from BestDamnPennyStocks.com, a stock promotion website, transmitted via interstate wire to at least one recipient in Massachusetts |
| Four | September 6, 2012 | Telephone call involving RAFFA, AUBEL, the CW, and the UC, transmitted via interstate wire to the CW in Massachusetts |
| Five | September 19, 2012 | Interstate wire transfer of $6,000 from an account in the name of Ventures & Projects Management Inc. at Capital Bank to an account in the name of JM Technologies at Citizens Bank |

All in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

28.     The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Indictment.

29.     Upon conviction of one or more of the offenses alleged in Counts One through Five of the Indictment,

### DAVID J. AUBEL and
### ROBERT J. RAFFA,

defendants herein, shall forfeit to the United States, jointly and severally, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense(s).

30.     If any of the property described in paragraph 29, above, as a result of any act or omission of the defendants:

> a.     cannot be located upon the exercise of due diligence;
>
> b.     has been transferred or sold to, or deposited with, a third party;
>
> c.     has been placed beyond the jurisdiction of the Court;
>
> d.     has been substantially diminished in value; or
>
> e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 29 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*/s/ May Slater*
FOREPERSON OF THE GRAND JURY

*/s/ Andrew J. Palid*
ANDREW J. PALID
SPECIAL ASSISTANT U.S. ATTORNEY

VASSILI THOMADAKIS
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; May 4, 2016

Returned into the District Court by the Grand Jurors and filed.

*/s/*
DEPUTY CLERK

5-4-16
2:32 pm